T.C. Memo. 1999-419

UNITED STATES TAX COURT

DAVID AND BARBARA KINCAID, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21682-97.                Filed December 27, 1999.

David Kincaid and Barbara Kincaid, pro se.

<u>Doreen M. Susi</u> and <u>David W. Otto</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent issued a final determination disallowing petitioners' claim for abatement of interest relating to petitioners' 1979 and 1982 tax years.  Petitioners timely filed a petition under section 6404(g)[1] and Rule 280.

_____

[1] Redesignated sec. 6404(i) by the Internal Revenue Service
(continued...)

The issues for decision are:

1.   Whether respondent's denial of petitioners' claim for abatement of interest that accrued after 1987[2] for petitioners' 1979 and 1982 tax years was an abuse of discretion.  We hold that it was not except as noted herein.

2.   Whether we have jurisdiction to review respondent's failure to abate additional interest for tax-motivated transactions imposed by section 6621(c) as in effect for the years in issue.  We hold that we do not.

Unless otherwise indicated, section references are to the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to David Kincaid.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners lived in Yuma, Arizona, when they filed the petition to abate interest.

A.   Petitioners' Investment in Signature Associates

In the early 1980's, petitioners invested in Signature Associates (Signature), a limited partnership, which invested in

---

[1](...continued)
Restructuring and Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 685, 743, 745.

[2]   Petitioners do not request abatement of interest that accrued before Jan. 1, 1988.

Encoder Associates (Encoder), a limited partnership. Encoder was part of a national group of about 83 energy management systems limited partnerships (EMS). Respondent audited the EMS partnerships from 1979 to 1985. Encoder and some of the other EMS partnerships were subject to the unified partnership audit and litigation provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648.

EMS taxpayers filed about 1,200 petitions in the Tax Court. In 1987, an EMS shelter group was formed, and the participants agreed to have trials in and to be bound by the results of two EMS test cases.

On October 14, 1987, attorneys from both sides met to plan an Appeals conference for all Encoder limited partners. The Appeals conference for all Encoder limited partners was held on November 10, 1987.

Around 1989, respondent had settlement negotiations with Encoder. Some of Encoder's limited partners settled, but Signature did not. On June 4, 1990, respondent sent a final partnership administrative adjustment (FPAA) to Signature telling Signature about adjustments to Encoder's 1982 return.

The test cases were tried in May 1991. Decisions in the test cases became final on September 2, 1993. Decision documents

based on the outcome of the test cases were filed on March 14, 1994.

The Encoder decision became final on June 12, 1994. Respondent denied petitioners' claim for their proportionate share of credits on their 1982 return and for a carryback of unused credit to their 1979 return. On May 29, 1995, respondent assessed tax against petitioners of $3,211 for 1979, and $9,400 for 1982, relating to petitioners' indirect investment in Encoder through Signature.

B.   Respondent's Notices of Deficiency for 1979 and 1982 and Later Events

Respondent mailed affected items notices of deficiency to petitioners for 1979 on May 30, 1995, and for 1982 on June 5, 1995. In them, respondent determined that petitioners were liable for the addition to tax for overvaluation under section 6659 relating to their share of the Signature/Encoder disallowed credits in 1979 and 1982. Petitioners filed a petition with this Court on August 28, 1995, disputing the determinations (docket No. 16805-95). Respondent filed an answer on October 30, 1995.

On January 31, 1996, Patrick Wilcox (Wilcox), respondent's Appeals officer, sent a letter to petitioners stating that it was important to meet as soon as possible. On February 2, 1996, petitioners' daughter telephoned Wilcox to arrange a conference. On February 3, 1996, petitioners wrote a letter to Wilcox stating that they were ready to meet.

On March 19, 1996, petitioners' daughter wrote to Loren Peterson (Peterson), respondent's Appeals officer, to ask how much respondent claimed petitioners owed for 1979 and 1982 including taxes, interest, and penalties.

On March 23, 1996, petitioners filed with the Ogden Service Center a request to abate interest (Form 843) that had accrued on their tax liabilities for 1979 and 1982. On May 3, 1996, the Ogden Service Center notified petitioners that their request for abatement was being sent to Andover, Massachusetts, for processing. On June 19, 1996, petitioners received a telephone call from Larry Landon (Landon) of the Andover Service Center. Landon said that their request for abatement would be handled by respondent's Phoenix Appeals office.

On June 20, 1996, petitioners' daughter wrote Peterson to ask whether petitioners' request for abatement should be handled by his office. She asked Peterson for copies of all documents relating to petitioners' 1979 and 1982 taxes, especially pertaining to Signature and Encoder. On July 12, 1996, petitioner met with Peterson.

On November 22, 1996, petitioners signed a second request for abatement of interest (Form 843) for their 1979 and 1982 years.

A notice of trial on December 9, 1996, was served on September 18, 1996. On December 9, 1996, the parties reported

that the case had settled.  On March 26, 1997, the Court entered a stipulated decision in docket No. 16805-95.  In it, the parties agreed that petitioners were liable for additions to tax under section 6659 of $401 for 1979 and $1,175 for 1982.  Petitioners paid the assessments of those additions to tax and the taxes assessed as computational adjustments but did not pay the interest because they believe the process had been unfair.

On July 25, 1997, respondent issued a final determination denying petitioners' interest abatement claim.

OPINION

A.    Abatement of Interest

1.    The Commissioner's Authority To Abate Interest

Under section 6404(e)(1), the Commissioner may abate part or all of an assessment of interest on any deficiency or payment of tax if (a) either (1) the deficiency was attributable to an error or delay by a Service official in performing a ministerial act, or (2) an error or delay by the taxpayer in paying his or her tax is attributable to a Service official being erroneous or dilatory in performing a ministerial act; and (b) the taxpayer caused no significant aspect of the delay.  Interest is abatable only after the Commissioner has contacted the taxpayer in writing about the deficiency or payment in question.  See sec. 6404(e) (flush language).  We apply an abuse of discretion standard in reviewing

the Commissioner's failure to abate interest. See Woodral v.
Commissioner, 112 T.C. 19, 23 (1999).

2. Ministerial or Managerial Act

Petitioners contend that we must abate interest which
accrued as a result of an error or delay by an IRS officer or
employee in performing a managerial act as well as a ministerial
act. We disagree.

Congress amended section 6404(e) in 1996 to permit abatement
of interest for unreasonable error and delay in performing a
ministerial or managerial act. Taxpayer Bill of Rights 2 (TBOR
2), Pub. L. 104-168, sec. 301(a)(1) and (2), 110 Stat. 1452, 1457
(1996). However, that standard first applies to tax years
beginning after July 30, 1996. TBOR 2, sec. 301(c), 110 Stat.
1457. Thus, it does not apply here. See Krugman v.
Commissioner, 112 T.C. 230, 239 (1999); Woodral v. Commissioner,
supra at 25 n.8.

Petitioners contend that respondent committed an abuse of
discretion by failing to abate interest relating to their 1979
and 1982 tax years after December 31, 1987.[3]

a. January 1, 1988, to September 30, 1995

Petitioners contend that respondent should have informed
them before May 30, 1995, and June 5, 1995, that they might be

---

[3] Petitioners concede that they are liable for interest
that accrued from Apr. 15, 1980 (for 1979), and Apr. 15, 1983
(for 1982), to Dec. 31, 1987.

liable for income tax deficiencies for 1982 and 1979, respectively. Petitioners contend that the period from 1979, the earlier year in issue, to 1995, when respondent issued the notices of deficiency, was simply too long. As to the FPAA sent on June 4, 1990, petitioners also contend that respondent's employees had a ministerial duty to send an FPAA in the Encoder case to Signature, and that respondent cannot prove that respondent mailed it to the correct address.

We disagree because petitioners' arguments relate to the time before May 30, 1995. The Commissioner may not abate interest that accrues before the Commissioner first contacts the taxpayer in writing with respect to the deficiency or payment of tax. Sec. 6404(e) (flush language); Krugman v. Commissioner, supra at 239. Respondent first contacted petitioners in writing about the additions to tax for 1979 and 1982 in the notices of deficiency for those years, sent on May 30 and June 5, 1995. Thus, respondent's refusal to abate interest before those dates was not an abuse of discretion. See sec. 6404(e) (flush language); Krugman v. Commissioner, supra.

In addition, based on the detailed testimony of respondent's lead project attorney for the EMS litigation, we find that none of the delays before September 30, 1995, resulted from errors by respondent's employees in performing a ministerial act.

Petitioners also contend that they would have agreed to a settlement in the Encoder partnership case in 1987 and 1988 if they had been offered one on similar terms to those involving other limited partnerships in which they were direct or indirect partners.  Petitioners contend that treating them differently from other taxpayers in their situation was a ministerial error which requires respondent to abate assessment of accrued interest from January 1, 1988, to the present.  We disagree based on the testimony of respondent's lead project attorney for the EMS litigation.

b.  October 1, 1995 to Date

Petitioners contend that respondent's employees gave them incorrect information and did not respond to them, causing significant delays in resolving this matter.  Petitioner testified that, around October 1995, respondent's District Counsel told them that interest would be tolled until the appeal was decided.  Petitioner testified that respondent's Appeals officer told petitioners' daughter on March 12, 1996, that interest had not accrued since October.  Respondent offered no evidence to counter petitioner's testimony.  We conclude that the statements by respondent's employees caused petitioners to delay the payment of interest starting October 1, 1995, and refusal to abate interest accruing thereafter was an abuse of discretion. See Douponce v. Commissioner, T.C. Memo. 1999-398.

B.    Tax-Motivated Interest Rate and TEFRA Constitutional Issues

Petitioners contend that they should not be liable for additional interest under section 6621(c), the 120 percent tax-motivated interest rate, because it is a penalty.  Petitioners also contend that the TEFRA procedures are unconstitutional because they do not provide due process, and that the Code sections which provide for 120 percent tax-motivated interest are unconstitutional ex post facto laws because Congress enacted them after petitioners incurred their tax liabilities in 1979 and 1982.

We lack jurisdiction under section 6404(g) to decide whether petitioners are liable for additional interest under section 6621(c), or to decide issues relating to the constitutionality of the TEFRA procedures, for the same reasons that we lack jurisdiction under section 6404(g) to decide whether a taxpayer is liable for additions to tax.  See Krugman v. Commissioner, 112 T.C. at 237.

To reflect the foregoing,

Decision will be entered under Rule 155.